UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**BALD GUY C-STORE, INC. and
HUSSEIN ABDALLAH,**

        **Plaintiffs,**

v.                                                     Case No: 6:22-cv-977-PGB-DCI

**UNITED STATES OF AMERICA,**

        **Defendant.**
_____/

## ORDER

This cause comes before the Court on Defendant United States of America's ("**Defendant**") Motion for Summary Judgment (Doc. 31 (the "**Motion**")). Plaintiffs Bald Guy C-Store, Inc., and Hussein Abdallah (collectively "**Plaintiffs**") have responded in opposition (Doc. 35 (the "**Response**")), and Defendant has replied to the Response (Doc. 36). Upon consideration, the Motion is due to be granted.

**I.    BACKGROUND**

Plaintiff Bald Guy C-Store, Inc. ("**BGCS**") is a convenience store that carries both food and nonfood items. (Doc. 30, ¶¶ 9, 14). Plaintiff Hussein Abdallah ("**Mr. Abdallah**") is BGCS' corporate officer. (*Id.* ¶ 9). In this action, Plaintiffs seek judicial review of an administrative decision to permanently disqualify BGCS from participation in the Supplemental Nutrition Assistance

Program ("**SNAP**"), 7 U.S.C. §§ 2011–2036, formerly known as the Food Stamp Program.[1] (Doc. 30, ¶ 1; *see generally* Doc. 1).

SNAP is operated by the United States Department of Agriculture ("**USDA**"), through the Food and Nutrition Service ("**FNS**"), for the purpose of "raising the level of nutrition among low-income households." (Doc. 30, ¶¶ 1–2 (quoting 7 U.S.C. § 2011)). SNAP benefits are often transferred to qualifying households using plastic Electronic Benefit Transfer ("**EBT**") cards, which function like debit cards. (*Id.* ¶ 5 (citing 7 C.F.R. § 271.2)). Such households can use SNAP benefits to purchase specified food items at stores that are approved to participate in SNAP. (*Id.* ¶ 3 (citing 7 U.S.C. § 2011)). However, SNAP benefits cannot be used to purchase ineligible items, such as alcohol, soap, or spoons. (*See id.* ¶ 14). Further, SNAP benefits cannot be exchanged for cash. (*Id.* ¶ 8 (citing 7 C.F.R. § 271.2)). The exchange of SNAP benefits for cash is known as "trafficking." 7 C.F.R. § 271.2.

The SNAP regulations state that FNS "shall" permanently disqualify a store from participation in the program if it determines that an employee of the store has engaged in trafficking. 7 C.F.R. § 278.6(e). However, FNS may impose a civil money penalty ("**CMP**") in lieu of permanent disqualification under certain circumstances. *See* § 278.6(i). Before making its final determination that a store has engaged in trafficking, FNS must send a "charge letter" to the store "specify[ing] the violations or actions which FNS believes constitute a basis" for

---

[1]  The implementing regulations for SNAP, as found in the *Code of Federal Regulations*, are cited *infra* where relevant.

permanent disqualification or the imposition of a CMP. § 278.6(b)(1). The store has ten (10) days from the date that it receives the charge letter to:

(1) respond to the charges by "set[ting] forth a statement of evidence, information, or explanation" for the alleged violations; and

(2) request consideration for a CMP in lieu of permanent disqualification and submit "documentation and evidence of its eligibility" in support of this request.

§ 278.6(b). Importantly, the SNAP regulations state that a store that does not timely request consideration for a CMP "shall not be eligible" for a CMP. § 278.6(b)(2)(iii).

Shortly after opening its doors in 2014, BGCS was approved to participate in SNAP. (Doc. 30, ¶ 10). When applying to participate in SNAP, Plaintiffs agreed (1) to ensure BGCS' employees were trained using SNAP's training materials, (2) to ensure BGCS' employees followed SNAP's regulations, and (3) to accept responsibility for violations of SNAP's regulations by any of BGCS' employees. (*Id*. ¶¶ 11, 13). In applying for participation in SNAP, Plaintiffs also acknowledged that violations of the SNAP regulations could result in administrative actions, including disqualification from SNAP. (*Id*. ¶ 12).

In November and December of 2018, FNS conducted an undercover investigation of BGCS to assess its compliance with SNAP regulations (the "**investigation**"). (*See id*. ¶ 14). During the investigation, undercover investigators ("**UI**") for FNS visited BGCS seven (7) times. (*Id*.). According to the

3

UI, on three (3) of these visits, BGCS did not violate any SNAP regulations. (*Id.*). However, on three (3) of these visits, BGCS exchanged SNAP benefits for ineligible, nonfood items and on one (1) of these visits, BGCS exchanged twenty dollars ($20.00) in SNAP benefits for ten dollars ($10.00) cash. (*Id.*; Doc. 30-1, p. 90).

These findings were memorialized in a sworn report regarding the investigation (Doc. 30-1, pp. 90–104 (the "**Sworn Investigation Report**")). (Doc. 30, ¶ 14). The Sworn Investigation Report included details such as: the dates of the transactions at issue; physical descriptions of the BGCS clerks who completed the transactions; the amount of the EBT benefits issued, used, and returned to the UI; an itemized list of each item the UI attempted to purchase along with an indication of whether it was eligible for SNAP and whether the clerk refused to exchange SNAP benefits for the item; and, finally, a brief synopsis summarizing each of the individual transactions. (Doc. 30-1, pp. 90–104).

FNS subsequently sent BGCS a charge letter dated February 25, 2019 describing its findings from the investigation (*Id.*, pp. 105–07 (the "**BGCS Charge Letter**")). (Doc. 30, ¶ 15). The BGCS Charge Letter enclosed a copy of the Sworn Investigation Report. (*Id.*). Therein, the identities of the UI who engaged in the subject transactions were redacted. (*Id.*; *see* Doc. 30-1, pp. 90–104). The BGCS Charge Letter noted that the sanction for trafficking is permanent disqualification and provided information about how BGCS could

4

request a CMP in lieu of this penalty. (Doc. 30, ¶¶ 16–18). The BGCS Charge Letter also invited Plaintiffs to respond to the charges and, if applicable, to provide information demonstrating BGCS' eligibility for a CMP within ten (10) calendar days of receiving the letter. (*Id.* ¶ 18). Plaintiffs received the BGCS Charge Letter on February 26, 2019. (*Id.* ¶ 15). Accordingly, Plaintiffs' response to the charges and request for consideration for a CMP were due on or before March 8, 2019. (*Id.* ¶¶ 18–19).

On March 7, 2019, Mr. Abdallah called FNS[2], who advised him that Plaintiffs' response to the BGCS Charge Letter was due the following day. (*Id.* ¶ 19). An attorney who represented Plaintiffs at that time also sent a letter dated March 7, 2019 to FNS. (*Id.*; Doc. 35, p. 3). In this letter, Plaintiffs' former counsel requested an extension of time for responding to the charges, expressly conceding, "[w]e are aware that doing so will forfeit our right to request the issuance of a civil money penalty in lieu of other sanctions." (Doc. 30, ¶ 19). FNS responded in a letter dated March 8, 2019 ("**FNS' Response Letter**"). (*Id.*). Therein, FNS granted Plaintiffs an extension for responding to the charges but reiterated that the time for requesting a CMP "could not be extended[.]" (*Id.*).

Plaintiffs received FNS' Response Letter on March 12, 2019. (*Id.*). That same day, Plaintiffs filed a Freedom of Information Act ("**FOIA**") request as to this matter, which placed the administrative review in abeyance until the FOIA process was completed nearly two (2) years later, in February 2021. (*Id.*).

---

[2] A person identified by the parties as Mr. Abdallah's "insurance agent/accountant" was also on this call. (Doc. 30, ¶ 19).

5

On February 22, 2021, Plaintiffs replied to the BGCS Charge Letter (Doc. 30-1, pp. 172–76 (the "**Reply to the Charges**")) and denied the allegations, arguing that FNS lacked sufficient evidence to support the charges. (Doc. 30, ¶ 20). Therein, Plaintiffs argued the evidence consisted of "he-said, she-said" allegations that could not satisfy "the [USDA]'s burden of proof at this stage of the proceedings." (Doc. 30-1, p. 175). In the same vein, Plaintiffs argued that the statements in the Sworn Investigation Report were "hearsay" and stated that the redactions in the Sworn Investigation Report meant there was "no reasonable opportunity for Mr. Abdallah to subpoena or otherwise depose the witness[.]" (*Id.* at pp. 175–76).

On July 26, 2021, FNS sent Plaintiffs a letter stating that FNS had considered Plaintiffs' Reply to the Charges, but that it had determined that the alleged violations occurred. (Doc. 30, ¶ 21; Doc. 30-1, pp. 203–04). Accordingly, FNS informed Plaintiffs that BGCS would be permanently disqualified from participating in SNAP upon receiving the letter (the "**Disqualification Decision**"). (Doc. 30, ¶ 21).

Plaintiffs requested an administrative review of the Disqualification Decision and submitted a legal brief in support of their argument that the Disqualification Decision should be overturned. (*Id.* ¶ 22). Therein, Plaintiffs raised the same general arguments they had presented in their Reply to the Charges. (*See* Doc. 30-1, pp. 216–23). On May 2, 2022, the Administrative Review Board issued its decision affirming FNS' Disqualification Decision,

6

finding there was sufficient evidence to support Plaintiffs' disqualification from SNAP (the "**Final Agency Decision**"). (Doc. 30, ¶ 23). Plaintiffs' appeal of the Final Agency Decision to this Court followed. (Doc. 1).

## II.   LEGAL STANDARD

### A.   Review of Final Agency Decision

Under 7 U.S.C. § 2023, an aggrieved food store may appeal a final agency decision disqualifying it from SNAP by filing a complaint in the appropriate district court. § 2023(a)(13). Further, the suit in the district court "shall be a trial de novo by the court in which the court shall determine the validity of the questioned administrative action." § 2023(a)(15).

Importantly, in the trial, the administrative agency's decision below carries a "presumption of validity." *Redmond v. United States*, 507 F.2d 1007, 1012 (5th Cir. 1975).[3] Thus, at this stage of the proceedings, the burden shifts to the aggrieved store to prove by a preponderance of the evidence that the disqualification decision was invalid. *Id*. at 1011–12 ("[T]he Act casts the burden of being the plaintiff on the aggrieved store with all of the usual responsibilities of a plaintiff in obtaining relief from a court, including the burden of proving facts to show that he is entitled to relief. In other words, the agency action stands, unless the plaintiff proves that it should be set aside."); *Goodman v. United*

---

[3] The Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

7

*States*, 518 F.2d 505, 507 (5th Cir. 1975) (explaining that "[t]his burden remains with the aggrieved store throughout the trial de novo in the district court.").

Accordingly, in the trial, "[t]he burden is placed upon the store owner to prove by a preponderance of the evidence that the violations did not occur." *Kim v. United States*, 121 F.3d 1269, 1272 (9th Cir. 1997); *accord Odeh v. Conrad*, No. 96-1156-CIV-T-17C, 1996 WL 378931, at *2 (M.D. Fla. June 23, 1996) ("At trial, the plaintiff/aggrieved food store bears the burden of proof to show, by a preponderance of evidence, that the alleged 'trafficking' did not occur.") (citing *Holmes v. United States*, 868 F. Supp. 1348, 1351 (M.D. Ala. 1994), *aff'd*, 67 F.3d 314 (11th Cir. 1995) (Table of Decisions Without Reported Opinions)). In attempting to meet this burden, the aggrieved store is permitted to present new evidence that is not contained within the administrative record. *Redmond*, 507 F.2d at 1012 ("By according the administrative action in question a presumption of validity, the statute recognizes the initial investigation and determination of the agency. By providing the aggrieved food store with a new trial where the store may introduce evidence outside the administrative record, the statute also protects the rights and interests of the store against final adverse action without the opportunity for an adversary hearing.").

If the Court determines that a store has engaged in "trafficking," it then reviews the sanction that was applied by the agency under an "arbitrary and capricious" standard. *Odeh*, 1996 WL 378931, at *2; *Yousef v. United States*, 647 F. Supp. 127, 131 (M.D. Fla. 1986). The agency's decision to permanently

8

disqualify a store from participation in SNAP is arbitrary and capricious "only 'if it is unwarranted in law or without justification in fact.'" *Odeh*, 1996 WL 378931, at *2 (quoting *Yousef*, 647 F. Supp. at 131).

Finally, "[d]espite the trial de novo provision, it is clear that summary judgment is a proper means for disposing of requests for review under section 2022 [now § 2023] where there are presented no genuine issues of material fact." *Yousef*, 647 F. Supp. at 131 (quoting *Modica v. United States*, 518 F.2d 374, 376 (5th Cir. 1975) (additional internal citations and internal quotation marks omitted)).

### B. Summary Judgment

A court may only "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the initial burden of "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" to support its position that it is entitled to summary judgment. FED. R. CIV. P. 56(c)(1)(A). "The burden then shifts to the non-moving party, who must go beyond the pleadings, and present affirmative evidence to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). "The court need consider only the cited materials" when resolving a motion for summary judgment. FED. R. CIV. P. 56(c)(3); *see also HRCC, LTD v. Hard Rock*

9

*Café Int'l (USA), Inc.*, 703 F. App'x 814, 816–17 (11th Cir. 2017) (per curiam) (holding that a district court does not err by limiting its review to the evidence cited by the parties in their summary judgment briefs).[4]

An issue of fact is "genuine" only if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine dispute of material fact exists, the Court must read the evidence and draw all factual inferences therefrom in the light most favorable to the non-moving party and must resolve any reasonable doubts in the non-movant's favor. *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007). But, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Brooks v. Cty. Comm'n of Jefferson Cty.*, 446 F.3d 1160, 1162 (11th Cir. 2006) (quoting *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts").

## III. DISCUSSION

In the Motion, Defendant argues that Plaintiffs cannot meet their burden of establishing that trafficking did not occur. (Doc. 31, p. 2). More particularly,

---

[4] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Constr., Inc.*, 487 F.3d 1340, 1345 (11th Cir. 2007).

10

Defendant contends that the investigative findings regarding BGCS' SNAP violations are undisputed, as "Plaintiffs cannot and have not provided any evidence to contradict the information contained within the investigative report." (*Id.* at pp. 12–13). Defendant further asserts that "Plaintiffs' evidence consists entirely of conclusory allegations and denials." (*Id.* at p. 13). Because Plaintiffs have failed to provide facts contradicting Defendant's evidence of trafficking, Defendant argues that it is entitled to judgment as a matter of law on this issue. (*Id.* at pp. 11–14).

In their Response, Plaintiffs assert that they have consistently disputed that the trafficking occurred, and that Defendant's representation that this fact is "undisputed" is thus inaccurate. (Doc. 35, p. 8). Plaintiffs further argue that the following issues of material fact should prevent the entry of summary judgment here, and attach the affidavit of Mr. Abdallah as evidentiary support:

(1) It "may very well have been Mr. Abdallah that was present at the sales counter" during the alleged violations. (*Id.* at p. 9). "Mr. Abdallah certainly did not allow any improper purchases to be made and he certainly would not" exchange cash for SNAP benefits. (*Id.*).

(2) Once Plaintiffs learned of the results of the investigation, they incorporated a new system at BGCS to prevent future violations, showing their commitment to compliance with SNAP's rules. (*Id.*).

(3) During the investigation, Mr. Abdallah was "generally at the Store during most all hours of operation and he does not recall" any SNAP violations occurring. (*Id.* at p. 8).

(4) The investigation showed that at least some clerks "refused to engage in trafficking SNAP benefits." (*Id.* at p. 9).

(5) The descriptions of the BGCS clerks who violated SNAP's regulations (the "**relevant clerks**") that are contained within the Sworn Investigation Report are "neither descriptive nor clear." (*Id.* at p. 8).

Here, Defendant has properly supported its Motion. (*See* Doc. 31); *Porter*, 461 F.3d at 1320. Thus, the burden shifts to Plaintiffs, who "must go beyond the pleadings, and present affirmative evidence to show that a genuine issue of material fact exists" to prevent the entry of summary judgment against them. *See Porter*, 461 F.3d at 1320. However, the Court finds that Plaintiffs' Response does not demonstrate the existence of a genuine issue of material fact. (*See* Doc. 35).

First, Plaintiffs' bald statement that they dispute that the trafficking occurred is a conclusory assertion that does not move the needle for Plaintiffs. (Doc. 35, p. 8); *see Yousef*, 647 F. Supp. at 132. Further, even if true, the facts that Mr. Abdallah did not personally violate SNAP and that Plaintiffs incorporated a new system to prevent SNAP violations after the investigation also do not raise genuine issues of material fact. (*See* Doc. 35, p. 9). The Eleventh Circuit has confirmed that innocent storeowners are strictly liable for SNAP violations by their store clerks. *TRM, INC. v. United States*, 52 F.3d 941, 944–48 (11th Cir.

12

1995). This is true even in cases where, upon learning of the SNAP violations, the storeowners take subsequent action to prevent future violations. *Id.*[5] Accordingly, Plaintiffs' actions after the alleged violations occurred are simply not relevant here. *See id.*

Moreover, the fact that Mr. Abdallah "does not recall" witnessing any SNAP violations, despite his general presence at the store for most of its hours of operation, does not create a "genuine" issue for trial. (*See* Doc. 35, p. 8). Neither does the fact that some of BGCS' clerks—who are not accused of the violations at issue—declined to violate SNAP. (*See id.* at p. 9). Despite speculating that Mr. Abdallah could conceivably have been at the sales counter when the alleged violations occurred, Plaintiffs do not provide any demonstrable evidence of this fact. (*See id.*). Indeed, Plaintiffs fall short of confirming that Mr. Abdallah was anywhere on the premises at the time of the violations. (*See id.* at pp. 8–9). Likewise, the fact that *some clerks* declined to violate SNAP provides little to no evidentiary support for the claim that *other clerks* acted similarly. Thus, in the absence of additional evidence, these facts do little more than raise a metaphysical doubt about whether the alleged violations occurred, and they therefore fail to raise a genuine issue for trial. *See Matsushita*, 475 U.S. at 586.

---

[5] The Eleventh Circuit's opinion in *TRM* also resolves Plaintiffs' claim in the Complaint that the administrative review procedures below deprived Plaintiffs of due process. *See* 52 F.3d at 943–47; (Doc. 1, ¶ 28). The *TRM* court held that, even assuming the administrative review process fails to sufficiently safeguard the aggrieved store's due process rights, the opportunity for a trial *de novo* in the district court where the aggrieved store may introduce evidence outside of the administrative record adequately protects these rights. 52 F.3d at 944 (collecting sources).

13

Finally, Plaintiffs assert that the descriptions provided in the Sworn Investigation Report of the relevant clerks are "neither descriptive nor clear," and claim, without providing further explanation or argument, that this raises a genuine issue of material fact. (Doc. 35, p. 8). To begin, the descriptions appear to the Court to be reasonably specific. The Sworn Investigation Report identifies two (2) of BGCS' clerks as having violated SNAP on a total of four (4) occasions. (Doc. 30-1, pp. 94, 96, 102, 104). Therein, the following descriptive information is provided:

(1) **November 29, 2018 violation**: committed by a male clerk between 40 and 45 years old, between 5'8" and 5'11" tall, weighing 180 to 190 pounds, with black hair and a light beard. (*Id.* at p. 94).

(2) **December 1, 2018 violation**: committed by a male clerk between 35 and 40 years old, between 5'8" and 5'11" tall, weighing 140 to 150 pounds, who was bald (the "**December 1 violator**"). (*Id.* at p. 96).

(3) **December 15, 2018, first violation**: committed by a clerk described in the same manner as the December 1 violator and is identified as being the same clerk as the December 1 violator. (*Id.* at p. 102).

(4) **December 15, 2018, second violation**: committed by a clerk described in the same manner as the December 1 violator and is identified as being the same clerk as the December 1 violator. (*Id.* at p. 104).

Accordingly, there are two relevant clerks: an average-sized bearded male with black hair and a slightly younger and slimmer bald male. (*See id.* at pp. 94, 96, 102, 104).

The administrative record reveals BGCS to be a modest convenience store, similar in size and layout to the convenience stores familiarly associated with gas stations. (*See, e.g.*, *id.* at pp. 48, 58, 67, 73). Moreover, BGCS looks to contain a single checkout counter. (*Id.* at p. 48). Under the circumstances, ascertaining the identities of the relevant clerks, who were behind the checkout counter on specified dates, would appear to be a simple task for Plaintiffs.

Notably, in their Response, Plaintiffs do not argue that they were unable to identify the relevant clerks by the descriptions provided in the Sworn Investigation Report. (*See* Doc. 35). Similarly, Plaintiffs do not attempt to demonstrate that those descriptions provide affirmative evidence that Plaintiffs are innocent of the charges. (*See id.*). For example, Plaintiffs do not assert that they did not employ a bearded or bald clerk during the relevant times or claim that it was a female clerk behind the counter on the dates at issue. (*See id.*).

The implied argument, then, is that the purported lack of specificity in the descriptions demonstrates that Defendant has insufficient evidence to prove that the violations occurred. (*See id.*). This argument gestures at the heart of the claim raised in Plaintiffs' Complaint, wherein Plaintiffs cite to purported deficiencies in *Defendant's* evidence in support of their appeal. (*See generally* Doc. 1). However, this argument ignores that the burden of proof in the district court has shifted to

15

Plaintiffs. *See, e.g., Redmond*, 507 F.2d at 1012. Accordingly, to demonstrate the existence of a genuine issue of material fact, Plaintiffs must provide at least a modicum of evidentiary support for the notion that the alleged trafficking did not occur. *See, e.g., id.*; *Kim*, 121 F.3d at 1272; *Holmes*, 868 F. Supp. at 1351.

While attacking the agency's evidence can be one weapon in the plaintiff's armamentarium, it must also be paired with affirmative evidence tending to suggest that the plaintiff's version of the facts is true. *Compare Odeh*, 1996 WL 378931, at *3 (finding an aggrieved store had a low likelihood of success in the appeal where its case was premised upon inconsistencies within the investigative report, and reasoning that the aggrieved store "could not plausibly convince the [c]ourt that mere discrepancies in [*the agency's*] evidence would satisfy *her* burden at trial.") *with Lazaro v. United States Dep't of Agric.*, 186 F. Supp. 1216–17 (M.D. Fla. 2001) (finding an aggrieved store had a high likelihood of success in the appeal where it not only raised substantial concerns regarding the agency's evidence, but also presented affirmative evidence tending to prove that the aggrieved store was innocent of the charges).

In their Response, Plaintiffs fail to put forth any evidence to support their burden of proving that the trafficking did not occur. (*See* Doc. 35). Plaintiffs' trade-off for bearing the burden of proof in the district court is their ability to present evidence that lies outside of the administrative record. *See Redmond*, 507 F.2d at 1012. Yet, critically, Defendant's Motion discloses that, "beyond requesting the administrative record in this litigation, Plaintiffs have engaged in

16

no other discovery efforts." (Doc. 31, p. 13 n.1).[6] This representation is untouched by Plaintiffs' Response. (*See* Doc. 35). It is also bolstered by the absence of motions to compel or similar evidence of discovery battles on the Court's docket, as well as Plaintiffs' failure to cite to any evidence outside of the administrative record in its Response to the Motion. (*See id.*). Consequently, Plaintiffs have not only failed to identify a genuine issue of material fact as to whether the trafficking occurred, but it appears that they have failed to even attempt to ascertain such a fact. As a result, Defendant is entitled to summary judgment on this issue.

Lastly, it is beyond dispute that permanent disqualification was the appropriate sanction. The former counsel for Plaintiffs acknowledged, in writing, Plaintiffs' waiver of the right to a CMP when he requested an extension of time for responding to the underlying charges. (Doc. 30, ¶ 19). As a result, Plaintiffs are not eligible to avoid permanent disqualification as a penalty. *See* 7 C.F.R. § 278.6(b)(2)(iii). Thus, under the circumstances, the Court cannot find that the imposition of the required penalty by FNS was arbitrary and capricious. *See Odeh*, 1996 WL 378931, at *2; *Yousef*, 647 F. Supp. at 131.

## IV.   CONCLUSION

For these reasons, it is **ORDERED** and **ADJUDGED** as follows:

1. Defendant's Motion for Summary Judgment (Doc. 31) is **GRANTED**.

---

[6] The discovery deadline in this case expired on December 4, 2023. (*See* Doc. 20, pp. 1–2).

2. The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendant United States of America and against Plaintiffs Bald Guy C-Store, Inc., and Hussein Abdallah.

3. The Clerk of Court is **DIRECTED** to close the file.

**DONE AND ORDERED** in Orlando, Florida on July 16, 2024.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties